# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT L. HINES, III,
    Plaintiff,

v.

TAMMY FERGUSON, *et al.*,
    Defendants.

CIVIL ACTION NO. 19-CV-3139

## MEMORANDUM

**TUCKER, J.**                                                                                                **SEPTEMBER 26, 2019**

Currently before the Court is an Amended Complaint filed by Plaintiff Robert L. Hines, III, a prisoner currently incarcerated at SCI Phoenix, which raises claims pursuant to 42 U.S.C. § 1983 stemming from the destruction of inmate property during the transfer of prisoners from SCI Graterford to SCI Phoenix. Hines also asserts claims related to his mail. For the following reasons, the Court will dismiss Hines's claims based on the destruction of his property and sever the claims based on Hines's mail.

## I. FACTS AND PROCEDURAL HISTORY[1]

Hines's initial Complaint named as Defendants: (1) Tammy Ferguson, Superintendent of SCI Graterford and SCI Phoenix; (2) Mandy Sipple, Deputy Superintendent of SCI Graterford and SCI Phoenix; (3) "C.E.R.T. John Does," the employees responsible for moving the inmates and their property; and (4) Secretary of Correction John Wetzel. Hines generally alleged that members of a Corrections Emergency Response Team ("CERT") who were responsible for transporting inmates' property from SCI Graterford to SCI Phoenix deliberately destroyed some of that property during the move. Hines alleged that CERT members destroyed certain of his

---

[1] The allegations are taken from Hines's pleadings.

1

religious materials, art supplies, legal materials, family photographs, and other personal property. He asserted claims under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments, and appeared to seek relief based on the destruction of his own property as well as on behalf of prisoners other than himself who suffered similar property loss.

After granting Hines leave to proceed *in forma pauperis*, the Court screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). Relevant here, the Court concluded that Hines failed to state a claim for denial of access to the courts because he failed to plausibly allege that he was prevented from pursing a non-frivolous challenge to his conviction based on the loss or destruction of his legal property. The Court also observed that Hines had not stated a First Amendment claim based on the destruction of religious items because he failed to allege that he was prevented from practicing his religion. Hines could not state a due process claim based on the loss and/or destruction of his property due to the availability of post-deprivation remedies, and he failed to state an equal protection claim because he did not plausibly allege that he was treated differently from others similarly situated. Hines was given leave to file an amended complaint.

Hines filed an Amended Complaint which again names Ferguson, Sipple, Wetzel, and CERT John Does as Defendants, and adds Smart Communications as a Defendant. He brings First, Sixth and Fourteenth Amendment claims predominately based on the destruction of his legal, religious, artistic, and other personal property in connection with the transfer of prisoners to SCI Phoenix.[2] He has also added claims that concern his mail, which were not included in the

---

[2] The Court does not understand Hines to be pursuing Eighth Amendment claims based on the destruction of his property. However, in the event he sought to pursue such claims, they fail for the reasons stated in the Court's prior Memorandum. (ECF No. 5 at 7-8); *see also Payne v. Duncan*, Civ. A. No. 15-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation

2

initial Complaint and that do not relate to the destruction of property that occurred during the transfer. Hines seeks compensatory and punitive damages, and declaratory relief as to his mail-based claims.

Hines, who was convicted of murder in 1998 but claims his innocence, alleges that the loss of legal property prevented him from pursuing an extra-judicial challenge to his conviction through the Philadelphia District Attorney's Office's Conviction Integrity Unit ("CIU"). *See Commonwealth v. Hines*, CP-51-CR-0606671-1997 (Phila. Ct. of Common Pleas); *see also Com. v. Hines*, No. 2353 EDA 2015, 2016 WL 2798224, at *1 (Pa. Super. Ct. May 11, 2016) ("On June 11, 1998, following a bench trial, the trial court convicted [Hines] of murder of the first degree, and related offenses."). He alleges that the destroyed legal materials included affidavits, "prepared legal briefs, documents, exhibits, transcripts, letters from attorneys, District Attorneys, Judges like (Honorable David Savitt), who is now deceased, that shed light on [his] innocence, or a cover up of the truth of [his] innocence." (Am. Compl. ECF No. 7 at 13-14.)[3]

---

of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017); *Dean v. Folino*, Civ. A. No. 11-525, 2011 WL 4527352, at *3 (W.D. Pa. Aug. 22, 2011) (allegations regarding destruction of property did not state Eighth Amendment claim), *report and recommendation adopted*, No. CIV.A. 11-525, 2011 WL 4502869 (W.D. Pa. Sept. 28, 2011). Any claims Hines may be attempting to bring based on an alleged failure to comply with Department of Corrections's policy also fail. *See Watson v. Rozum*, Civ. A. No. 12-35J, 2012 WL 5989202, at *8 (W.D. Pa. Oct. 29, 2012) ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension."), *report and recommendation adopted*, Civ. A. No. 12-35J, 2012 WL 5989245 (W.D. Pa. Nov. 29, 2012); *see also Laufgas v. Speziale*, Civ. A. No. 04-1697 PGS, 2006 WL 2528009, at *9 (D.N.J. Aug. 31, 2006) ("[A] prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.").

[3] The Court adopts the pagination assigned to the Amended Complaint by the CM/ECF docketing system because Hines's complaint is not consecutively paginated.

On August 2, 2019, Hines received a letter from the CIU which indicated that the CIU received Hines's submission, reported that the CIU began a "preliminary investigation into [his] claims," and asked Hines to complete "revised and updated Submission and Consent forms" to assist with the "process." (*Id.* at 15 & 27.) Hines asserts that the materials he sought to submit to the CIU to support his allegations of "actual innocence, corrupt offices, [and] Brady proof" were destroyed. (*Id.* at 15.) Hines also indicates that he was prevented from pursuing a challenge in state court. (*Id.*)

Turning to his religious property, Hines alleges that among the destroyed property were four kufis, one prayer rug, and four religious texts. Hines asserts that "these type and colored items (Kufis, Books, and Prayer Rug), are no longer allowed for purchase." (*Id.* at 20.) Hines also alleges that, as a condition of his Islamic faith, he must have a clean prayer rug, the ability to cover his head, and the ability to pray and read religious texts.

Hines also asserts claims based on the destruction of his art work and family photographs. According to Hines, the loss of his art work—which he describes as "a hand crafted assortment of origami work"—and art supplies violates his First Amendment right to express himself. (*Id.* at 23.) He also asserts a First Amendment claim based on the loss of his family photographs.

Hines further alleges that members of CERT conspired against him because he is African American, Muslim, and a "Jail House Litigator." (*Id.* at 24.) That allegation is based on Hines's assertion that most of the CERT members were "majority white males of the Middle or Western district, [whose] conduct shows traits of religious, racial, and [ethnic] misconduct." (*Id.*) Hines contends that CERT members' behavior "fits the pattern of retaliation" and notes that he was using the grievance system and litigating matters in court at the time of the move. (*Id.*)

4

Hines's Amended Complaint adds claims not asserted in his original Complaint that the Court understands to be challenging the Department of Corrections's recently adopted mail policy. "Pursuant to that policy, non-privileged incoming mail addressed to inmates must be sent to Smart Communications' facility in Florida where the mail is scanned, emailed to the facility where the inmate is located, printed by DOC staff, and delivered to the inmate."[4] *Robinson v. Pa. Dep't of Corr.*, Civ. A. No. 19-1689, 2019 WL 2106204, at *1 (E.D. Pa. May 13, 2019). Hines alleges that his "<u>protected mail</u>" is being "read, copied, censored, infringed, [and] invaded," and that prison officials contracted with Smart Communications to violate his "protected rights to communicate, without intrusion of privacy to his <u>attorney</u>, the <u>district attorney</u>, <u>Judges</u> and the <u>courts</u>." (Am. Compl. ECF No. 7 at 17 (underscore in original).) In that regard, Hines alleges that letters from the District Attorneys Office and letters from other law firms who contacted him were not opened in his presence, and he did not receive the original copy. He also contends that his mail is being copied and stored in a database for seven years in accordance with the policy.

## II. STANDARD OF REVIEW

As Hines is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether the Amended Complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*

---

[4] The relevant policy, "DC-ADM 803 provides that '[a]ll incoming, **non-privileged** inmate correspondence must be addressed and sent to the Department's contracted central incoming inmate mail processing center,' which is Smart Communications located in St. Petersburg, Florida." *Jacobs v. Dist. Attorney's Office*, Civ. A. No. 10-2622, 2019 WL 1977921, at *3 (M.D. Pa. May 3, 2019) (emphasis in original). DC-ADM 803 is available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/803%20Inmate%20Mail%20and%20Incoming%20Publications.pdf (last visited Sept. 26, 2019).

5

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* The Court construes Hines's allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Hines has failed to state a claim.

### A. Claims Based on the Destruction of Art Work, Art Supplies, and Photographs

The Court previously determined that the destruction of Hines's non-legal, non-religious personal property did not provide a basis for a constitutional claim. (*See* ECF No. 5.) In the Amended Complaint, Hines attempts to reframe his claims based upon the loss of his art work, art supplies, and family photographs as First Amendment free expression claims, rather than Fourteenth Amendment due process claims. Regardless of the label Hines has attached, it remains that his claims are based on the destruction of personal property.

While the Court does not question that the property had significant artistic or sentimental value, the fact that it has such value does not change its characterization as personal property. *Accord Blake v. JPay*, Civ. A. No. 18-3146, 2019 WL 3858158, at *2 (D. Kan. Aug. 16, 2019) (destruction of prisoner's manuscripts treated as loss of personal property; due process claim rejected as not plausible where adequate post-deprivation remedy existed); *McFadden v. Mail Room Staff*, Civ. A. No. 13-1029, 2014 WL 4924306, at *3 (M.D.N.C. Sept. 30, 2014) (prisoner

6

failed to state a cognizable First Amendment claim under § 1983 based on destruction of manuscript by prison mailroom because, although prisoners enjoy a protected First Amendment interest in sending and receiving mail, he possessed a meaningful post-deprivation remedy for loss of his personal property). It is clear that the First Amendment protects the right to receive and disseminate ideas. *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367 (1969); *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). It is equally clear that incarceration does not strip one of his First Amendment rights, and that the guarantees of that constitutional provision are applicable to states under the Fourteenth Amendment. *Cruz v. Beto*, 405 U.S. 319 (1972); *Long v. Parker*, 390 F.2d 816 (3rd Cir. 1968). However, the destruction of a prisoner's personal property does not implicate the First Amendment merely because the destroyed property is allegedly the product of expression. Accordingly, Hines's First Amendment property loss claims involving his art work, art supplies, and family photographs are not plausible because they are, in essence, claims based on the destruction of property for which Hines has an adequate post-deprivation remedy. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984))); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property).

### B. Claims Based on the Destruction of Legal Materials

Hines alleges that he was denied access to the courts as a result of the destruction of his legal materials. "Under the First and Fourteenth Amendments, prisoners retain a right of access

7

to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415.

Hines predominately alleges that the loss of his legal materials prevented him from challenging his conviction through the CIU. He also alludes to proceedings in state court (Am. Compl. ECF No. 7 at 15), presumably Hines's fifth petition for post-conviction relief that was pending in the Philadelphia Court of Common Pleas at the time of the movement of prisoners to SCI Phoenix.[5] *See Commonwealth v. Hines*, CP-51-CR-0606671-1997 (Phila. Ct. of Common Pleas). The docket reflects that the state court issued a notice on October 24, 2018 informing Hines that his petition would be dismissed as untimely because he failed to invoke an exception to the timeliness provision of the Post-Conviction Relief Act. *Id.* The state court noted that Hines relied on judicial opinions that either did not constitute new facts or did not apply to him. The state court denied Hines's petition on February 12, 2019 as untimely.

---

[5] The Court takes judicial notice of the dockets and prior opinions issued in Hines's criminal case. *See Buck v. Hampton Twp.*, 452 F.3d 256, 260 (3d Cir. 2006) (holding that courts may consider matters of public record). In 2016, the Pennsylvania courts rejected Hines's fourth post-conviction petition on the ground that it was untimely. *See Com. v. Hines*, No. 2353 EDA 2015, 2016 WL 2798224, at *3 (Pa. Super. Ct. May 11, 2016) ("[B]ecause the record demonstrates that Appellant's fourth PCRA petition is untimely with none of the statutory exceptions to the time bar proven, we affirm the order of the trial court dismissing Appellant's PCRA petition."). Hines filed an amended petition for post-conviction relief in November 2017, followed by another amended petition in April 2018. *See Commonwealth v. Hines*, CP-51-CR-0606671-1997 (Phila. Ct. of Common Pleas).

Hines has not pled any specific facts that would allow the Court to plausibly conclude he has been prevented from pursing a non-frivolous challenge to his conviction. Instead, Hines's allegations are general and conclusory. He has not explained how the lost legal materials establish his innocence or reveal a defect in his conviction in a manner that would support a non-frivolous legal challenge, especially in consideration of the stringent legal standards that govern post-conviction challenges. *See* 42 Pa. Cons. Stat. Ann. § 9545(b). Accordingly, Hines has not plausibly alleged that he suffered an actual injury to state a claim that he was denied access to the courts. *See Bowens v. Matthews*, 765 F. App'x 640, 643 (3d Cir. 2019) ("To the extent that Bowens described his PCRA claim at all, he did not describe it well enough to show that it is 'nonfrivolous' or 'arguable.'"); *Monroe*, 536 F.3d at 206 (plaintiffs' allegations that "defendants confiscated their legal materials" and that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim).

Furthermore, regarding Hines's allegation that he was prevented from pursuing or lost the ability to pursue relief through the CIU, there appears to be no specific constitutional right to seek discretionary prosecutorial reexamination of charging decisions. *See Wayte v. United States*, 470 U.S. 598, 607 (1985) (holding that prosecutors are granted broad discretion in charging decisions so long as the decision is not based on an unjustifiable standard such as race, religion, or other arbitrary classification); *Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in . . . case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals communications."). It is also not clear that Hines's case before the CIU has been hampered. The letter Hines attached to his Amended

9

Complaint indicates that the CIU is conducting a "preliminary investigation into [his] claims" and, thus, moving forward with its review at this time.[6] (Am. Compl. ECF No. 7 at 27.) In sum, Hines's allegations do not establish that he suffered an actual injury as a result of the destruction of his legal materials.

## C. Claims Based on Destruction of Religious Items

Hines also brings claims based on the destruction of certain religious items. The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.") (citations omitted). In order to state a plausible Free Exercise claim, a plaintiff must allege a "substantial burden" on the exercise. *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981); *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972). Stated another way, the free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) (internal citations omitted). In addition, to state a denial of religious freedom claim in this instance, Hines must allege that the destruction of his property was not reasonably related to a legitimate, penological interest. *O'Lone*, 482 U.S. at 349-50; *Turner v. Safley*, 482 U.S. 78, 89 (1987). "[C]ourts must [also] examine whether an inmate has alternative means of

---

[6] It is also not clear on what basis Hines applied to the CIU. If, for instance, he raised allegations that exculpatory evidence was withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), which his pleading suggests, (Am. Compl. ECF No. 7 at 13), the CIU would presumably be able to investigate that allegation independently of any evidence Hines sought to provide.

10

practicing his or her religion generally, not whether an inmate has alternative means of engaging in the particular practice in question." *DeHart v. Horn*, 227 F.3d 47, 55 (3d Cir. 2000).

Hines alleges that covering his head, offering prayer on a clean prayer rug, and reading/studying are conditions of his Islamic faith. (Am. Compl. ECF No. 7 at 20-21.) He adds that the destruction of his kufis, prayer rug, and religious texts imposed a hardship on his ability to practice his religion. (*Id.* at 21.) Regarding his destroyed property, he notes that "these type and colored items (Kufis, Books, and Prayer Rug), are no longer allowed for purchase." (*Id.* at 20.) Hines does not allege that he no longer has the ability to wear or possess a kufi or prayer rug or practice the tenets of his religion. Rather, he appears to be alleging only that the specific items lost are not available for repurchase. Because Hines fails to assert that he is unable to practice his religion through alternative means even though he no longer has access to specific religious property that was destroyed in the transfer, his First Amendment claim is not plausible. *See O'Banion v. Anderson*, 50 F. App'x 775, 776 (7th Cir. 2002) ("O'Banion has no First Amendment freedom-of-religion claim because he does not suggest that the confiscation of his property restricted the exercise of his religious beliefs. He cannot resurrect his property claim simply by characterizing the feathers and furs as 'religious property' without alleging that his religious observance was unreasonably restricted.").

### D. Retaliation and Discrimination Claims

Hines generally alleges that the CERT members' conduct "fits the pattern of retaliation" because he was "using the grievance system," and "litigating in court." (Am. Compl. ECF No. 7 at 24.) He also alleges that "this would not have happened had [he] not been [an] African American, Muslim, who is a Litigator that was located at SCI-Graterford." (*Id.*) The Court construes these allegations as retaliation and discrimination claims.

11

"To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some adverse action at the hands of prison officials,' and (3) 'his constitutionally protected conduct was a substantial or motivating factor in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (per curiam) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)) (internal quotations omitted). Resorting to legal process and filing a grievance against prison officials constitutes protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Hines's general and vague allegations that he was using the grievance process and litigating cases at the time of the events in question, and his description of himself as a litigator, are insufficient on their own to support a retaliation claim. *See Pelzer v. Superintendent Houtzdale SCI*, 547 F. App'x 98, 99 (3d Cir. 2013) (per curiam) ("While he presents some vague and conclusory allegations that the defendants destroyed his property in retaliation for his filing unidentified prior legal actions, these allegations, standing alone, are insufficient to state a claim."); *Zanders v. Ferko*, 439 F. App'x 158, 160 (3d Cir. 2011) (per curiam) (inmate failed to state a retaliation claim when he failed to provide additional factual information to support his allegation that a prison official "threatened him on numerous occasions in retaliation for exercising his rights to file his grievance and lawsuit and that the stress and fear of these incidents led to a stroke").

Hines's discrimination claims are best understood as equal protection claims brought under the Fourteenth Amendment. However, nothing in Hines's Amended Complaint suggests that he was treated differently due to his membership in a protected class. As noted in the Court's prior Memorandum, (ECF No. 5 at 9), prisoners do not constitute a protected class for Fourteenth Amendment purposes. *See Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263

(3d Cir. 2001). Furthermore, Hines has not alleged that he was treated differently from others who were similarly situated. Rather, he bases these claims on a general, speculative allegation that his property would not have been destroyed but for the fact that he is African-American, Muslim, and a litigator. Those allegations do not support a plausible equal protection claim.[7] *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"); *see also Faruq v. McCollum*, 545 F. App'x 84, 87 (3d Cir. 2013) ("To state a claim for race- or religion-based discrimination, [plaintiff] needed to show specifically that he received different treatment from that received by other similarly situated inmates." (citing *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)).

### E. Claims Based on Mail

Hines separately asserts a claim that his legal mail was opened and copied by Defendants Wetzel, Ferguson and Sipple in conspiracy with Defendant Smart Communications. (Am. Compl. ECF No 7 at 17-18.) As noted above, this claim appears to involve a challenge to the Department of Corrections's relatively new mail policy. The claim is distinct from Hines's claims related to property destruction that occurred in connection with the transfer of prisoners from SCI Graterford to SCI Phoenix.

---

[7] Hines's allegation that members of CERT were "majority white males of the Middle or Western district, [whose] conduct shows traits of religious, racial, and [ethnic] misconduct." (Am. Compl. ECF No. 7 at 24), does not plausibly support an equal protection claim. *See Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) (per curiam) ("Williams claimed only that his civil rights were violated by defendants of the opposite race, but that is insufficient to state an equal protection claim.").

13

Because the claims related to Hines's mail are unrelated to the balance of Hines's other claims, the claims are subject to severance under Federal Rule of Civil Procedure 21. Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *McKinney v. Prosecutor's Office*, Civ. A. No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Indeed, "[t]he courts[] . . . have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison[.]" *McKinney*, 2014 WL 2574414, at *15. To remedy a misjoinder, a Court may add or drop a party or sever any claims. Fed. R. Civ. P. 21. "A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21." *Boyer v. Johnson Matthey, Inc.*, Civ. A. No. 02-8382, 2004 WL 835082, at *1 (E.D. Pa. Apr. 16, 2004).

Hines's factual allegations concerning the opening of legal mail presents a distinct set of events from those related to the destruction of his property. Accordingly, the Court will sever

14

this claim from the instant lawsuit and direct the Clerk of Court to open a new lawsuit, using the Amended Complaint as an opening document, naming as Defendants Tammy Ferguson, Mandy Sipple, John Wetzel, and Smart Communications.[8] If Hines intends to proceed on claims related to his mail, he will be obligated to either pay the fees or file for leave to proceed *in forma pauperis* in that new lawsuit.[9]

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Hines's claims based on the destruction of his property by CERT members for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Hines has already been put on notice of the defects in those claims and been given an opportunity to cure those defects. As he was unable do to so, the Court will dismiss Hines's claims with prejudice because it appears that further attempts at amendment would be futile. The Court will sever Hines's claims related to his mail so that he may proceed on those claims in another lawsuit. An appropriate Order follows.

**BY THE COURT:**

*/s/ Petrese B. Tucker*
**PETRESE B. TUCKER, J.**

---

[8] The Amended Complaint does not allege that members of CERT interfered with Hines's mail or were otherwise involved in the events giving rise to these claims.

[9] If Hines is granted leave to proceed *in forma pauperis* in that lawsuit, he will be obligated to pay another filing fee in installments pursuant to 28 U.S.C. § 1915(b) and his claims will be subject to screening under § 1915(e)(2)(B).

15